**PARK MANAGEMENT & REALTY, INC.**

Transaction History
Homewood Shores Condominium Association
Transaction Detail : 1/1/2018 - 9/20/2018

Date: 9/20/2018
Time: 3:31 pm
Page: 1

**Name:** Tanya (Post) Washington  **Address:** 820 Elder Rd Unit 402
**Homeowner Account:** 820402  **Homeowner Status:** Current Owner

| Date | Description | Batch | Amount | Paid | Balance |
|---|---|---|---|---|---|
| 07/01/2018 | Assessment 2018 | 19233 | $ 277.90 | $ - | $ 277.90 |
| 07/11/2018 | Assessment (Delinquent Fee) 2018 | 24799 | 25.00 | - | 302.90 |
| 08/01/2018 | Assessment 2018 | 19233 | 277.90 | - | 580.80 |
| 08/11/2018 | Assessment (Delinquent Fee) 2018 | 25397 | 25.00 | - | 605.80 |
| 09/01/2018 | Assessment 2018 | 19233 | 277.90 | - | 883.70 |
| 09/11/2018 | Assessment (Delinquent Fee) 2018 | 26927 | 25.00 | - | 908.70 |
| 09/19/2018 | Check # 24725251945 | 0 | - | 710.19 | 198.51 |
| | Total | | $908.70 | ($710.19) | $198.51 |

*Handwritten:*
8-8-18 Sheriff eviction fee        78.50        277.01
9-25-18 - BK Lift Stay fee         781.00       1,058.01

CINCSystems, Inc. Copyright 2018. All rights reserved.

**PARK MANAGEMENT & REALTY, INC.**

**Transaction History**
Homewood Shores Condominium Association
Transaction Detail : 1/1/2017 - 9/17/2018

Date: 9/17/2018
Time: 3:41 pm
Page: 2

**Name:** Tanya (Pre 13) Washington  **Address:** 820 Elder Rd Unit 402
**Homeowner Account:** 820402  **Homeowner Status:** Previous Owner

| Date | Description | Batch | Amount | Paid | Balance |
|---|---|---|---|---|---|
| 06/11/2018 | Assessment (Delinquent Fee) 2018 | 24317 | $ 25.00 | $ - | $ 4,631.53 |
| 07/06/2018 | Keay inv# 88498 - Place Eviction 2018 | 24706 | 300.00 | - | 4,931.53 |
| 07/06/2018 | Keay inv# 88499 - Restrictive Covenant Violation - 10 Day Notice 2018 | 24706 | 62.61 | - | 4,994.14 |
| 08/08/2018 | Keay inv# 89941 - Sheriff eviction fees 2018 | 25316 | 78.50 | - | 5,072.64 |
| | Total | | $15,886.93 | ($10,814.29) | $5,072.64 |

*[Handwritten:]* Credit Sheriff eviction fee - Move to post  (78.50)  4,994.14
9-7-18 Bankruptcy Legal fee   $175.00   5,169.14

**PARK MANAGEMENT & REALTY, INC.**

**Transaction History**
Homewood Shores Condominium Association
Transaction Detail : 1/1/2017 - 9/17/2018

Date: 9/17/2018
Time: 3:41 pm
Page: 1

**Name:** Tanya (Pre 13) Washington  **Address:** 820 Elder Rd Unit 402
**Homeowner Account:** 820402  **Homeowner Status:** Previous Owner

| Date | Description | Batch | Amount | Paid | Balance |
|---|---|---|---|---|---|
| | Previous Balance | | $8,357.14 | | $ 8,357.14 |
| 01/01/2017 | Assessment 2017 | 11563 | 277.90 | - | 8,635.04 |
| 01/11/2017 | Assessment (Delinquent Fee) 2017 | 11827 | 25.00 | - | 8,660.04 |
| 02/01/2017 | Assessment 2017 | 11563 | 277.90 | - | 8,937.94 |
| 02/11/2017 | Assessment (Delinquent Fee) 2017 | 12334 | 25.00 | - | 8,962.94 |
| 02/22/2017 | Check # 487896784 | 0 | - | 700.00 | 8,262.94 |
| 02/28/2017 | Ck 487896784 Returned Stop Payment | 0 | - | (700.00) | 8,962.94 |
| 03/01/2017 | Assessment 2017 | 11563 | 277.90 | - | 9,240.84 |
| 03/06/2017 | Check # 9446619129 | 0 | - | 700.00 | 8,540.84 |
| 03/06/2017 | Check # 9446619130 | 0 | - | 700.00 | 7,840.84 |
| 03/06/2017 | Check # 9446619131 | 0 | - | 700.00 | 7,140.84 |
| 03/11/2017 | Assessment (Delinquent Fee) 2017 | 13765 | 25.00 | - | 7,165.84 |
| 04/01/2017 | Assessment 2017 | 11563 | 277.90 | - | 7,443.74 |
| 04/10/2017 | Check # 497722502 | 0 | - | 700.00 | 6,743.74 |
| 05/01/2017 | Assessment 2017 | 11563 | 277.90 | - | 7,021.64 |
| 05/04/2017 | Check # 502173573 | 0 | - | 700.00 | 6,321.64 |
| 06/01/2017 | Assessment 2017 | 11563 | 277.90 | - | 6,599.54 |
| 06/02/2017 | Keay inv 71663 - Ph call w/ UO atty 2017 | 15198 | 68.75 | - | 6,668.29 |
| 06/11/2017 | Assessment (Delinquent Fee) 2017 | 15332 | 25.00 | - | 6,693.29 |
| 07/01/2017 | Assessment 2017 | 11563 | 277.90 | - | 6,971.19 |
| 07/07/2017 | Write Off per settlement agreement | 0 | - | 4,693.29 | 2,277.90 |
| 07/10/2017 | Check # 28286328 | 0 | - | 2,000.00 | 277.90 |
| 07/11/2017 | Assessment (Delinquent Fee) 2017 | 15842 | 25.00 | - | 302.90 |
| 08/01/2017 | Assessment 2017 | 11563 | 277.90 | - | 580.80 |
| 08/11/2017 | Assessment (Delinquent Fee) 2017 | 17419 | 25.00 | - | 605.80 |
| 08/16/2017 | Admin - First Warning 2017 | 17511 | 15.00 | - | 620.80 |
| 08/23/2017 | Check # 28517544 | 0 | - | 621.00 | (0.20) |
| 09/01/2017 | Assessment 2017 | 11563 | 277.90 | - | 277.70 |
| 09/11/2017 | Assessment (Delinquent Fee) 2017 | 17934 | 25.00 | - | 302.70 |
| 10/01/2017 | Assessment 2017 | 11563 | 277.90 | - | 580.60 |
| 10/11/2017 | Assessment (Delinquent Fee) 2017 | 18490 | 25.00 | - | 605.60 |
| 11/01/2017 | Assessment 2017 | 11563 | 277.90 | - | 883.50 |
| 11/11/2017 | Assessment (Delinquent Fee) 2017 | 18873 | 25.00 | - | 908.50 |
| 11/16/2017 | Admin - First Warning 2017 | 18941 | 15.00 | - | 923.50 |
| 12/01/2017 | Assessment 2017 | 11563 | 277.90 | - | 1,201.40 |
| 12/07/2017 | Admin - Final Warning 2017 | 19262 | 30.00 | - | 1,231.40 |
| 12/11/2017 | Assessment (Delinquent Fee) 2017 | 20321 | 25.00 | - | 1,256.40 |
| 12/19/2017 | Legal Turnover 2017 | 20472 | 95.00 | - | 1,351.40 |
| 01/01/2018 | Assessment 2018 | 19233 | 277.90 | - | 1,629.30 |
| 01/11/2018 | Assessment (Delinquent Fee) 2018 | 20809 | 25.00 | - | 1,654.30 |
| 01/11/2018 | Keay inv 80457 - Demand Notice 2018 | 20787 | 198.94 | - | 1,853.24 |
| 02/01/2018 | Assessment 2018 | 19233 | 277.90 | - | 2,131.14 |
| 02/11/2018 | Assessment (Delinquent Fee) 2018 | 21283 | 25.00 | - | 2,156.14 |
| 03/01/2018 | Assessment 2018 | 19233 | 277.90 | - | 2,434.04 |
| 03/06/2018 | Keay inv# 83158 - Prep & file summons & complaint 2018 | 21646 | 763.79 | - | 3,197.83 |
| 03/11/2018 | Assessment (Delinquent Fee) 2018 | 21722 | 25.00 | - | 3,222.83 |
| 04/01/2018 | Assessment 2018 | 19233 | 277.90 | - | 3,500.73 |
| 04/10/2018 | Keay inv# 84494 - Court Appearance 2018 | 22244 | 500.00 | - | 4,000.73 |
| 04/11/2018 | Assessment (Delinquent Fee) 2018 | 22294 | 25.00 | - | 4,025.73 |
| 05/01/2018 | Assessment 2018 | 19233 | 277.90 | - | 4,303.63 |
| 05/11/2018 | Assessment (Delinquent Fee) 2018 | 23837 | 25.00 | - | 4,328.63 |
| 06/01/2018 | Assessment 2018 | 19233 | 277.90 | - | 4,606.53 |



Return to Mary
Form 250    22332382

**Look Out**

22 332 382

DECLARATION OF CONDOMINIUM OWNERSHIP
AND OF
EASEMENTS, RESTRICTIONS AND COVENANTS

FOR

HOMEWOOD TOWERS ON THE LAKE CONDOMINIUM

any Unit, Garage Unit, or the Common Elements or any part thereof; and the Board shall not have the power to assess any one or more of the Units or Owners for any court costs, attorneys' fees, or other cost or expense in connection with such lawsuit or any similar lawsuit.

8. <u>Liability of the Trustee, Developer and Board of Managers</u>. The members of the Board of Managers, the Trustee, the Developer, and the Managing Agent shall not be personally liable to the Owners or others for any mistake of judgment or for any acts or omissions made in good faith as such Board members or otherwise in exercise of the powers herein vested in the Board. The Owners shall indemnify and hold harmless each of the members of the Board of Managers, the Trustee, the Developer and the Managing Agent against all contractual liability to others arising out of contracts made by the Board of Managers, the Trustee, the Developer or the Managing Agent on behalf of the Owners unless any such contract shall have been made in bad faith or contrary to the provisions of this Declaration. It is also intended that the liability of any Owner arising out of any contract made by the Board of Managers, the Trustee, the Developer or the Managing Agent, or out of the aforesaid indemnity, shall be limited to such proportion of the total liability thereunder as his percentage of interest in the Common Elements bears to the total percentage interest of all the Owners in the Common Elements. Every agreement made by the Board of Managers, Trustee, Developer, or by the Managing Agent on behalf of the Owners shall provide that the members of the Board of Managers, Trustee, Developer or the Managing Agent, as the case may be, are acting only as agent for the Owners and shall have no personal liability thereunder (except as Owners) and that each Owner's liability thereunder shall be equal to his percentage of ownership in the Common Elements.

ARTICLE VI

Assessment-Maintenance Fund

1. Each year on or before December 1st, the Board shall estimate the total amount necessary to pay the cost of wages, materials, insurance, services and supplies which will be required during the ensuing calendar year for the rendering of all services, together with a reasonable amount considered by the Board to be necessary for a reserve for contingencies and replacements, and shall on or before December 15th notify each Owner in writing as to the amount of such estimate, with reasonable itemization thereof. The annual budget shall also take into account the estimated net available cash income for the year from the operation or use of the Common Elements. Said "estimated cash requirement" shall be assessed to the Owners accord-

-18-

ing to each Owner's percentage of ownership in the Common Elements as set forth in said Exhibit "C". On or before January 1st of the ensuing year, and the first calendar day of each and every month of said year, each Owner, jointly and severally, shall be personally liable for and obligated to pay to the Board or as it may direct, one-twelfth (1/12) of the assessment made pursuant to this paragraph. On or before April 1st of each calendar year following the initial meeting, the Board shall supply to all Owners an itemized accounting of the maintenance expenses for the preceding calendar year actually incurred and paid, together with a tabulation of the amounts collected pursuant to the estimates provided, and showing the net amount over and short of the actual expenditures plus reserves. Any amount accumulated in excess of the amount required for actual expenses and reserves shall be credited according to each Owner's percentage of ownership in the Common Elements, to the next monthly installments due from Owners under the current year's estimate, until exhausted, and one-third (1/3) of any net shortage shall be added, according to each Owner's percentage of ownership in the Common Elements, to the installments due in each of the succeeding three (3) months after rendering of the account.

2. The Board shall build up and maintain a reasonable reserve for contingencies and replacements. Extraordinary expenditures not originally included in the annual estimate which may become necessary during the year, shall be charged first against such reserve. If said "estimated cash requirement" proves inadequate for any reason, including non-payment of any Owner's assessment; the Board may at any time levy a further assessment, which shall be assessed to the Owners according to each Owner's percentage of ownership in the Common Elements. The Board shall serve notice of such further assessment on all Owners by a statement in writing giving the amount and reasons therefor, and such further assessment shall become effective with the monthly maintenance payment which is due more than ten (10) days after delivery or mailing of such notice of further assessment. All Owners shall be personally liable for and obligated to pay their respective adjusted monthly amount.

3. When the first Board elected hereunder takes office, it shall determine the "estimated cash requirement", as hereinabove defined, for the period commencing thirty (30) days after said election and ending on December 31 of the calendar year in which said election occurs. Assessments shall be levied against the Owners during said period as provided in paragraph (1) of this Article.

4. The failure or delay of the Board to prepare or serve the annual or adjusted estimate on the Owner shall not constitute a waiver or release in any manner of such Owner's obligation to pay the maintenance costs and necessary reserves, as herein provided, whenever the same shall be determined, and in the absence of any annual estimate or adjusted estimate, the Owner shall continue to pay the monthly

-19-

maintenance charge at the then existing monthly rate established for the previous period until the monthly maintenance payment which is due more than ten (10) days after such new annual or adjusted estimate shall have been mailed or delivered.

5. The Board shall keep full and correct books of account in chronological order of the receipts and expenditures affecting the Common Elements, specifying and itemizing the maintenance and repair expenses of the Common Elements' and any other expenses incurred. Such records and the vouchers authorizing the payments shall be available for inspection by any Owner or any representative of an Owner duly authorized in writing, at such reasonable time or times during normal business hours as may be requested by the Owner. Upon ten (10) days' notice to the Board and payment of a reasonable fee, any Owner shall be furnished a statement of his account setting forth the amount of any unpaid assessments or other charges due and owing from such Owner.

6. All funds collected hereunder shall be held and expended for the purposes designated herein, and (except for such special assessments as may be levied hereunder against less than all the Owners and for such adjustments as may be required to reflect delinquent or prepaid assessments) shall be deemed to be held for the benefit, use and account of all the Owners in the percentages set forth in Exhibit "C".

7. If an Owner is in default in the monthly payment of the aforesaid charges or assessments for thirty (30) days, the members of the Board may bring suit for and on behalf of themselves and as representatives of all Owners, to enforce collection thereof or to foreclose the lien therefor as hereinafter provided; and there shall be added to the amounts due the costs of said suit, and other fees and expenses together with legal interest and reasonable attorneys' fees to be fixed by the Court. To the extent permitted by any decision or any statute or law now or hereafter effective, the amount of any delinquent and unpaid charges or assessments and interest, costs and fees as above provided shall be and become a lien or charge against the Unit Ownership of the Owner involved when payable and may be foreclosed by any action brought in the names of the Board as in the case of foreclosure of liens against real estate. Said lien shall take effect and be in force when and as provided in the Act; provided, however, that encumbrances owned or held by any bank, insurance company or savings and loan association shall be subject as to priority, after written notice to said encumbrancer of unpaid common expenses, only to the lien of all common expenses on the encumbered Unit Ownership which become due and payable subsequent to the date said encumbrancer either takes possession of the Unit or Garage Unit, accepts a conveyance of any interest in the Unit Ownership, or has a receiver appointed to a suit to foreclose his lien. Any encumbrancer may from time to time request in writing a written